R. WIESE et al. v. STATE.

No. A-5265.   Opinion Filed Nov. 2, 1925.
(240 Pac. 1075.)

Albert C. Morrison and A. L. Morrison, for plaintiffs in error.

The Attorney General and G. B. Fulton, Asst. Atty. Gen., for the State.

DOYLE, J. The information in this case charges that in Canadian county, on the 19th day of April, 1924, the de-

fendants R. Wiese and Emil Wiese did have in their possession about six gallons of corn whisky with intent to sell the same. On their trial the jury returned verdicts finding them guilty as charged in the information fixing the punishment of R. Wiese at a fine of $500 and confinement in the county jail for 6 months, and the punishment of Emil Wiese at a fine of $225 and confinement in the county jail for 60 days. To reverse the judgments rendered on the verdicts they appeal.

The evidence shows that on the date alleged under authority of a search warrant officers visited the defendants' home seven or eight miles southwest of El Reno and searched the premises.

A. W. Culp, deputy sheriff, testified:

"We found several holes in the orchard on the place and out in the pasture. 30 yards in front of the house we found buried by the side of the road a half gallon jar of corn whisky. We found a five gallon jar of whisky over the fence in the canyon, 3 feet off the defendants' land. We also found two empty barrels in a shed at the barn that had been used for mash."

That prior to this time he had been out to the farm of Mr. Wiese and searched it three or four times.

The articles seized were offered in evidence. This evidence was all admitted against defendants' objections, on the ground that the same was obtained by an unlawful search and seizure, and in support of the objection the affidavit upon which the search warrant issued, and a copy of the search warrant, upon which all the evidence offered by the state was obtained, was offered in evidence.

At the close of the case for the state defendants' counsel moved the court to direct or advise the jury to return a verdict of not guilty on the ground that all the evidence was incompetent, and that, if admissible, it was insufficient

to connect the defendants with the alleged offense. Which motion was overruled.

Rudolf Wiese testified that he was at his home when the officers came there, and they gave him a copy of a search warrant; that he knew nothing about the five-gallon jar of whisky which they found buried on the land adjoining his farm, about 60 rods east of his house; that the barrels which they found in the shed on his place had been used to make slop for his hogs; that he had never handled whisky in his life, and knew nothing about the whisky found by the officers.

On cross-examination he testified that he had lived in Canadian county 14 years, coming there from Minnesota, where he had lived 12 or 13 years.

Against defendants' objections he was further cross-examined as follows:

"Q. Where did you come from to Minnesota? A. Came from Germany.

"Q. How long have you been a citizen of the United States? A. I filed my papers about 3 weeks ago; 3 or 4 weeks ago.

"Q. Just answer the question. How long have you been a citizen of the United States?

Emil Wiese, 18 year old son of the other defendant, testified that he lived with his parents, and that he knew nothing about the whisky found by the officers.

One of the grounds of the motion for a new trial and assigned as error is that the court erred in permitting the county attorney on cross-examination of the defendant to show that he was a foreigner and had lived in the country for about 25 years before becoming naturalized, and misconduct of the county attorney in arguing to the jury that the defendant Rudolf Wiese was a foreigner. That

the cross-examination of the defendant was improper is not open to question, and was obviously for the purpose of prejudicing the minds of the jury against the defendants.

The rule is well established in this jurisdiction that incompetent, irrelevant, and immaterial evidence which tends to excite the passions, arouse the prejudices, or to warp or influence the judgment of jurors in any degree cannot be considered as harmless. Allen v. State, 10 Okla. Cr. 55, 134 P. 91.

In Logi v. State, 271 S. W. 451, the Supreme Court of Arkansas held that "district attorney's argument, in prosecution for manufacturing liquor, that accused was a foreigner, and had lived in county 22 years without becoming naturalized," was prejudicial error. It is the argument of counsel for defendants that the insufficiency of the affidavit upon which the search warrant was issued, and the invalidity of the search warrant upon which all the evidence offered by the state was obtained, makes the same incompetent.

The affidavit upon which the search warrant was based recites that Mr. W. C. King had informed affiant that there was a cave upon Sec. 7, Tp. 11, R. 7, used for the purpose of manufacturing intoxicating liquors, "and for additional reason that affiant (C. A. Pearce) has searched the premises at a prior date and found evidence of violation of the prohibitory law of the state." The command of the search warrant was "to search all Bldgs., out Bldgs., appurtenances and land situated on Sec. 7 Twnshp. 11 Range 7, Canadian County, Okla."

Both the federal and state Constitution guarantee to the people security of their persons, houses, and possessions from unreasonable search and seizure. The courts have ever protected the sanctity of the home, and will always guard with zealous care the citizen's indefeasible right

of personal security, personal liberty, and private property, where that right has never been forfeited by his conviction of some public offense. Boyd v. U. S., 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746; U. S. v. Crossen (D. C.) 264 F. 459.

In U. S. v. Innelli (D. C.) 286 F. 731, it was held:

"Evidence designating the building to be searched only by street and number is insufficient to furnish the particular description of the place to be searched, required by Act of June 15, 1917, * * * under which a search warrant for liquors unlawfully possessed must be sought by a provision of the Volstead Act, where it appeared that the building so designated was occupied by more than one tenant, so that it was in fact several places."

In the opinion it is said:

"This motion concerns the law of arrests, searches and seizures. They have been made time out of mind. The power to make them is an absolutely necessary power. Experience, however, has taught us that the power is one open to abuse. The most notable historical instance of it is that of letters de cachet. Our Constitution was framed during the seethings of the French Revolution. The thought was to make lettres de cachet impossible with us. Protective guards have in consequence been thrown around us, to lessen the harassments and violations of individual rights to which we might otherwise be subjected. Such laws are seldom intentionally violated. What usually happens is that, in the zeal to perform one duty, the other is disregarded or remains unknown. This innocence of motive, however, is no justification. The law, and all laws, must be regarded. This is expected of all good citizens. To the judges it is a special command. Let it not be forgotten that there were prohibitions in the Constitution before the Eighteenth Amendment. Among them are the Fourth and Fifth. If they afford protection to the guilty, this is the price to be paid for the general good. One prohibition is that no one shall be compelled to give evidence against himself. If anything in the possession of the accused is taken from him by unlawful force to be used in

evidence against him, it cannot be so used in violation of his rights."

In Foreman v. State, 8 Okla. Cr. 480, 129 P. 1101, we said:

"The Bill of Rights is something more than a mere compilation of glittering generalities. Some of. its provisions constitute a formal and public declaration of popular rights and liberties. The guarantee in article 2, par. 30 (38 Williams) that the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated, should be respected by all peace officers and law-abiding citizens." Section 7013 of the Enforcement Act (Comp. Stats. 1921) provides: " 'No warrant shall be issued to search a private residence, occupied as such, unless it, or some part of it, is used as a store, shop, hotel, boarding house or place for storage or unless such residence is a place of public resort.' And the statute is in accordance with the Bill of Rights."

And see Foster v. State, 27 Okla. Cr. 270, 226 P. 602.

In Gore v. State, 24 Okla. Cr. 394, 218 P. 545, we held:

"A search and seizure forcibly made under color of a void search warrant is an 'unreasonable search and seizure,' within the meaning of section 30 of our Bill of Rights."

And further held that evidence obtained by an unlawful search and seizure and contrary to section 30 of the Bill of Rights was improperly received against the defendant in violation of section 21 of the Bill of Rights, giving one accused of crime immunity from becoming a witness against himself.

Obviously the search warrant in this case was not issued in accordance with law. The constitutional provision prescribes that—

" No warrant shall issue but upon probable cause, supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

The affidavit here describes the place to be searched as a certain section of land, and the proof shows that the defendant was the owner of only one quarter of said section. It fails to state the name of the owner, and does not state that his residence is a place of public resort. It also appears that it is based on information and belief.

On the record before us we are convinced that the search and seizure in this case was an unauthorized trespass, and that all the state's evidence was improperly admitted against the defendants in violation of their constitutional and statutory rights.

The judgments appealed from herein are accordingly reversed, and the cause remanded, with direction to dismiss.

BESSEY, P. J., and EDWARDS, J., concur.