HENRY GRANSBURY v. STATE.

No. A—9372.   Aug. 12, 1938.

(82 P. 2d 240.)

Finis O. Stewart, of Cherokee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and O. Mark Ginder, Co. Atty., of Cherokee, for the State.

BAREFOOT, J. The defendant was convicted in the district court of Alfalfa county, where he was charged with the crime of unlawful possession of liquor, and as a second and subsequent violation, and given a sentence of 18 months in the penitentiary, and to pay a fine of $1,500 and has appealed.

Defendant in his petition in error alleges 18 different specifications of error. In his brief he relies upon four of the 18, for a reversal of the judgment. Three of the specifications refer to the motion of the defendant to quash the search warrant, and the fourth is that the court erred in overruling the demurrer to the evidence offered by the state. At the conclusion of the state's testimony this would naturally follow, if any of the first three specifications of error were valid. They may all be considered together.

The defendant was charged in the information with having the unlawful possession on January 14, 1937, of 134 pints of whisky; 30 pints of gin; 20 pints of apricot liquor; and 69 pints of alcohol, with the intention of selling, bartering, giving away and otherwise furnishing said intoxicating liquor to others, in violation of the prohibitory liquor law of the state of Oklahoma, and with having been previously convicted in the county court of Alfalfa county on the 14th day of February, 1936, of the unlawful possession of intoxicating liquor, and to have been sentenced and served a term of 30 days in the county jail and paid a fine of $150.

The possession of the liquor as alleged in the information grew out of the execution of a search warrant based upon the affidavit of Ted Guffy, a deputy sheriff of Alfalfa county, and the issuance of the same by the county judge. The affidavit as a basis for the issuance of the search warrant was in part as follows:

"State of Oklahoma, County of Alfalfa, ss.:

"In the County Court in and for Said County and State.

"Complaint and Affidavit for Search Warrant.

"I, Ted Guffy, being first duly sworn depose and say, that in Alfalfa County, in the State of Oklahoma, on the 14th day of January, 1937, Henry Gransbury and John Doe, whose name is otherwise to your informant unknown, in certain buildings and premises described as follows, to wit: The west ½, of section 1, township 28, range 10, W.I.M., in said county and state, did then and there unlawfully and willfully have in their possession and under their control, and did then and there unlawfully keep and does now unlawfully have in their possession and under their control, and does keep intoxicating liquors, described as wine, whisky, beer and other spirituous, fermented and malt liquors, the exact quantity thereof, and a more particular description thereof this affiant cannot give, and certain personal property, fixtures and furniture, consisting of bars, glasses, jugs, bottles and other furniture, containers and fixtures, a more particular description of which this affiant cannot give, use for same.

"That the said persons are still willfully and unlawfully keeping the said property and intoxicating liquors above described for the purpose and with the intent to violate the laws of the state of Oklahoma, and that they are used in and about the business of keeping a place where intoxicating liquors are wilfully and unlawfully sold, and that all of the above said described devices, furniture, fixtures and appliances are being used by said persons in aid of said unlawful business.

"And the affiant further says that the above named persons, at the said place and in the said buildings, are now engaged in the business of keeping a place where intoxicating liquors are sold, given away and otherwise furnished to divers persons whose names are to this affiant unknown, in violation of the prohibitory laws of the state of Oklahoma, and is using all of the said above described property in connection with and in aid thereof.

"Affiant says that the above mentioned premises is in part a private residence, and that which is a private residence the same is a place of public resort. That divers per-

sons, whose more full and correct names to the affiant are unknown, are permitted to congregate and do congregate on said premises for the purpose of purchasing and drinking intoxicating liquors."

Upon the filing of the above affidavit a search warrant was issued by the county judge and was executed on the same day by searching the premises therein described on the land shown, and there was found on the premises 134 pints of whisky; 30 pints of gin; 20 pints of apricot liquor; and 69 pints of alcohol.

Upon the filing of the information against the defendant, a motion was made to suppress the evidence and a hearing was had thereon. Evidence was taken both by the defendant and the state. This evidence revealed that the defendant and one Nellie Minnick had been husband and wife and had obtained a divorce in June, 1936; that at that time they had a property settlement and the property described in the search warrant became the property of Nellie Minnick, defendant's wife, other real property a few miles distant had been taken as the property of the defendant, however the defendant had secured a lease from his former wife and occupied the house located upon the premises described in the search warrant, and used the pasture for grazing purposes. The house occupied by the defendant was where the liquor was found, and the defendant was present at the time of the search, and at that time he admitted to the deputy sheriff who made the search, and in the presence of others, that the liquor belonged to him; and that if he had been given a little time he would have disposed of the same as he intended to quit. He did not move from the premises until in February, 1937.

Without reviewing all the evidence in this opinion, it may be said that the contention of the defendant that Nellie Minnick, his former wife, was in possession of the premises, is not borne out by the evidence. It reveals that she had abandoned the premises and was staying at the home of her

parents, several miles distance; that she had gone to the premises on the date of the search for a definite and specific purpose. There is nothing to show that she was in any way interested in the liquor found.

The contention that the brother of the defendant resided on the premises, and also Clara Hoefer, an incompetent ward of the defendant who acted as his housekeeper, is wholly without merit. The evidence revealed that the brother had moved away from the premises prior to the search, and Clara Hoefer was an incompetent ward of the defendant, who had no control or supervision over the premises where the liquor was found. Certainly the defendant should not be allowed to hide behind the skirt of this unfortunate and incompetent ward.

The contention of the defendant that Floyd and Mollie Gonzales, Mexican sheepherders, resided in a tent on the premises at the time the search was made, was wholly disproved by the witness Jim Mills, who testified that these parties moved away from the premises, going to New Mexico, just after July, 1936, and long prior to the time the search was conducted and the liquor found.

The contention of defendant: "That at the time of the issuance of said search warrant there were three separate and distinct sets of people living on said premises, maintaining separate and distinct quarters, and living as much apart as persons in a rooming house or hotel, all of which was well known to the complainant," is not supported by the evidence in this case. The question having been decided by the trial court against the contention of the defendant, we do not find it erred. The evidence supports the finding.

The contention of the defendant that the description in the search warrant embraced too large body of land is untenable.

A careful examination of the cases cited by the defendant to support this proposition will show that the pivotal

point in each case was not that the premises described in the search warrant embraced too large a body of land, but that the facts clearly show that the premises described in the search warrant were owned and occupied by several persons, so that it was in fact several places. Reutlinger v. State, 29 Okla. Cr. 290, 234 P. 224.

Defendant in his brief complains that the name of the person owning the place searched should have been stated in the affidavit and the search warrant.

The decisions of this court do not support this contention. In fact the cases hold that the name of the occupant does not have to be stated if the place is otherwise particularly described. Sherwood v. State, 48 Okla. Cr. 263, 290 P. 1112; State v. Skelton, 36 Okla. Cr. 377, 254 P. 754; Ross v. State, 38 Okla. Cr. 252, 260 P. 90.

The affidavit for the search warrant and the search warrant itself in the case at bar both contain the name of the defendant, and the evidence conclusively shows that he was in the possession and control of the premises where the liquor was found. Certainly he did not have to be the owner of the premises to be in possession of the liquor found thereon. The affidavit in this case is in positive language, and was unquestionably sufficient to give the court jurisdiction to issue the warrant.

If specific facts are known by the party making the affidavit, it is always best to state those facts in the affidavit.

The case of McHenry v. State, 61 Okla. Cr. 450, 69 P. 2d 90, is very similar to the case at bar, and fully supports the position here taken.

See, also, McCullough v. State, 39 Okla. Cr. 293, 264 P. 916; Dobbs v. State, 39 Okla. Cr. 376, 265 P. 658; State v. Skelton, 36 Okla. Cr. 377, 254 P. 754; Smith v. State, 30 Okla. Cr. 144, 235 P. 273.

The cases relied upon by the defendant to support this proposition are: Seick v. State, 57 Okla. Cr. 364, 48 P. 2d 355; Hall v. State, 34 Okla. Cr. 334, 246 P. 642; Brandt v. State, 34 Okla. Cr. 400, 246 P. 1106; Weise v. State, 32 Okla. Cr. 203, 240 P. 1075; Daniels v. State, 32 Okla. Cr. 426, 241 P. 836; Myer v. State, 34 Okla. Cr. 421, 246 P. 1105; Dobbins v. State, 40 Okla. Cr. 146, 267 P. 678; Lucas v. State, 56 Okla. Cr. 413, 41 P. 2d 131; Bryson v. State, 59 Okla. Cr. 130, 56 P. 2d 1198.

We have carefully examined the above cases, and they are based upon entirely different facts than are shown by the evidence in this case. In many of those cases no names are given as to the owner of the land, or as to the occupants thereof. Many of the affidavits are shown to have been on information and belief, and nowhere state that the premises are being used as a place of public resort. The lands are described as certain sections and the proof shows that many different persons not only owned, but occupied the premises, while in the case at bar the proof shows that the defendant was in the exclusive possession and control of the premises where the liquor was found, and admitted to the officer who made the search that the liquor belonged to him. The affidavit of the officer in the instant case is positive as to the allegations that the liquor was on the premises for the purpose of sale, and that the premises were being used as a place of public resort. The evidence taken as a whole does not show anyone in possession and control of the premises, except the defendant, and the affidavit was amply sufficient to justify the court in issuing the search warrant, and under the evidence the jury was justified in finding the defendant guilty as charged in the information.

The evidence at the trial of the case was practically the same as introduced on the motion to suppress the evidence. The defendant did not testify at the time of the trial, nor was any evidence offered in his behalf.

430

Finding no error in the record, we are of opinion that the judgment should be affirmed. It is so ordered.

DAVENPORT, P.J., and DOYLE, J., concur.