# J. H. COOK v. STATE.

No. A-6225. Opinion Filed June 9, 1928.
(267 Pac. 1045.)

Crump & Seawel, for plaintiff in error.

Edwin Dabney, Atty Gen., and J. Berry King, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was convicted in the district court of Muskogee county on a charge of receiving stolen property, knowing the same to have been stolen, and was sentenced to imprisonment in the county jail for a period of six months. Motion for new trial was filed and overruled, and exceptions saved. From this judgment and sentence, the defendant brings his appeal to this court.

The evidence on behalf of the state, in substance, is as follows: That on the night of the 13th of August,

1925, the Clay Saddle Shop, in Muskogee, was entered and articles taken, including some bridles, suitcase, lines, blankets, purses, brief case and man's wide brimmed black felt hat; that on or about the 22d day of August, 1925, G. E. Corbin, sometimes called Ed Corbin, a deputy sheriff of Muskogee county, appeared before W. Ray Kirk, justice of the peace, and made affidavit and application for a search warrant, upon which application and affidavit a search warrant was issued, the charging part of which, omitting the caption, is as follows:

"Proof by affidavit having been this day made before me by G. E. Corbin, showing that affiant has probable cause to believe and does believe that intoxicating liquors are being manufactured, sold, bartered, given away or otherwise furnished, or such liquors are being kept in storage for the purpose of selling, bartering, giving away or otherwise furnishing in violation of the law, in, upon, or about a certain building and premises, to wit, a 1½-story frame building and premises situated at 12 mi. SE of Muskogee, and now owned, controlled, or used by Jim Cook. And it appearing that there is probable cause for believing that such grounds are true, you are therefore commanded in daytime or nighttime to make an immediate search of the above-described property, and to seize and safely keep and to bring before the undersigned any and all of the above-described property, and to serve a copy of this warrant upon the defendants, and each of them, or any person or persons in whose possession, or under whose control, the above-described property may be found, and to arrest the said defendants, and each of them, and if no person found in the possession of said property, so state in your return, and post a copy of this warrant on the door of the building or room wherein the said property is found and make return of this warrant within three days from the issuing thereof. Dated this 22d day of August, 1925."

It appears from the record that after this search warrant was delivered to Ed Corbin, that Corbin in company with J. W. Ruble left Muskogee in a car and went to the home of the defendant, arriving there about 2

o'clock in the afternoon, the defendant not being at home; they found, in the house, two daughters about grown; the officers claim that under the search warrant they proceeded to search defendant's residence and after going through trunks, dresser drawers, grips, the bedrooms, and the smokehouse, and all of the private places of the defendant's home, including that of his family, they found certain articles they thought to be articles that had been stolen from the Clay Saddle Shop some days prior to this search. The officers' return is silent as to whether they found any intoxicating liquors as described in the warrant they claim to have had to search the defendant's premises.

It further appears from the record that after they made the search, in the absence of the defendant, they remained at defendant's home for about five hours until he and his wife and smaller children returned. that they had the articles gathered together and called his attention to the articles they had, and the defendant told them where he had secured them.

Mrs. E. L. Clay testified, over the objection of the defendant, and identified a number of the articles as being articles of the same kind and character that had been taken from the Clay Saddle Shop, of which she was the owner and manager on or about the 13th day of August, 1925.

Sam Blaine, whom the record discloses as having been a former convict, was permitted to testify that he was at the defendant's home on the morning the defendant stated that he had bought these articles from a negro by the name of John Berryman, and a Mexican, on the 14th day of August, 1925, and that he did not know they were stolen when he bought them.

Mr. J. W. Ruble, a witness for the state, testified that he was a special officer for the Frisco Railroad and

had a commission as deputy sheriff, and as to having been with Ed Corbin when he searched the home of the defendant and found certain articles there that they believed had been stolen. The deputy made a most remarkable return on the search warrant which was introduced in evidence, and of which the defendant complained as being an illegal search warrant. The warrant, as shown by a copy introduced in evidence, specifically directed the officer to search the premises named in the warrant for intoxicating liquors, and if any were found to bring the liquor before the justice of the peace issuing the warrant. No provision in the warrant gives the officer authority to search for anything other than intoxicating liquor and to bring the same, if any were found, before the officer issuing the warrant. The record discloses, however, that when the deputy making the search made his return, omitting the caption, the return is as follows:

"Received this writ this the 22d day of August, 1925, and executed the same by searching the within described premises, and by seizing the following described properties, the same being covered by this warrant, to wit, 7 bridles, 1 grip, 7 pocketbooks, belts, and by arresting ———, on the ——— day of ———, 192—, and by bringing the defendant and said property before the court as commanded.

"J. F. Ledbetter, Sheriff,

"By G. E. Corbin, Deputy Sheriff.

"Mdse. only."

We have set out in substance all the testimony of the state, which was procured by reason of the search warrant, and the property seized by the officer when he was making the search of defendant's premises, excepting the testimony of Mrs. Clay, who, over the objection of the defendant, identified some of the articles seized as being the same kind of articles that were kept in her

store that had been burglarized on the night of August 13, 1925.

The defendant, in presenting his errors alleged to have been committed by the trial court, has discussed them under two propositions. We will consider them in the order in which they have been presented by the defendant. The first proposition urged is:

"The search of the private residence and premises of the plaintiff in error, without his knowledge or consent, and in his absence, and seizure of the articles discovered thereby was violative of his constitutional and statutory rights, and the evidence secured in such illegal and unconstitutional manner was clearly inadmissible, and the court committed reversible error in admitting it over the objection and exceptions of the plaintiff in error."

Section 30, art. 2, of the Bill of Rights, provides:

"The rights of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

Section 7012, C. O. S. 1921, provides:

"That no such warrant shall issue but upon probable cause, supported by oath or affirmation describing as particularly as may be the place to be searched, and the person or thing to be seized."

Section 7009, C. O. S. 1921, provides:

"That when it shall be made to appear to any judge of any court of record, or any justice of the peace, that there is probable cause to believe that liquor is being kept for the purpose of violating the prohibitory laws, such officer may issue a warrant directed to any peace officer in the county, commanding him to search the premises described and designated in such complaint and warrant."

Section 7013, C. O. S. 1921, provides:

"No warrant shall be issued to search a private residence, occupied as such, unless it, or some part of it, is used as a store, shop, hotel, boarding house, or place for storage, or unless such residence is a place of public resort."

The defendant urges that the affidavit for the search warrant was not sufficient upon which to give the court jurisdiction to issue a search warrant, and the search warrant under which the officers claim to have been acting was so indefinite and uncertain that it would not justify the officers in searching his private home and taking therefrom any articles that the officers might believe had been stolen, having no actual knowledge of the facts themselves.

The application for the search warrant in this case alleges that G. E. Corbin has probable cause to believe, and does believe, that intoxicating liquors are being manufactured, sold, bartered, given away or otherwise furnished, or that said liquor is being kept in storage for the purpose of selling, bartering, giving away or otherwise furnishing the same, in violation of the law, in, upon, or about a certain building situated in Muskogee county, Okla., being more fully described as follows::

"A 1½-story frame building and premises situated 12 mi. SE Muskogee, and used as a residence [or as a] private residence, some part of which is used as a store, shop, hotel, boarding house, place of public resort, or place of storage, and now owned, controlled, or used by Jim Cook."

It will be noted that the affidavit does not charge that the premises was occupied by Jim Cook as a residence, only charging that it was owned, controlled, or used by Jim Cook. It will also be noticed that the description in the application for the search warrant is indefinite and does not particularly describe any place

to be searched, locating the building in Muskogee county, somewhere from Muskogee. The application does not describe the building as being located in township, section, or range, nor on any highway in the county. An examination of the search warrant discloses that it is more indefinite and uncertain as to the location of the building to be searched than the application for the warrant; the description given in the search warrant being as follows:

"A 1½-story frame building and premises situated at 12 mi. SE of Muskogee, and now owned, controlled, or used by Jim Cook."

Under this description, no officer unfamiliar with the country could have located definitely the place to be searched. The court will take judicial notice that there have been proper surveys made in all the counties in Oklahoma, and that the lands are described by section, township, and range, and subdivisions of sections; that the officers, if they had taken pains, could have ascertained and set forth in the affidavit and warrant the particular description of the place to be searched as well as the property to be seized.

It is not charged definitely as to whether the house they desired to search was owned by the defendant, controlled by him, or used by him. It was charged that one or the other of the conditions existed. It will be seen that no description whatever is contained in the warrant other than the place to be searched was "a 1½-story frame building and premises situated 12 mi. SE Muskogee." The place to be searched is not located in any town, township, county, upon any highway nor even within the county of Muskogee.

This court has repeatedly held that the description in the warrant should be sufficiently definite that no discretion is left to the officer making the search. Lang-

ham v. State, 35 Okla. Cr. 57, 248 P. 349; Turknett v. State, 36 Okla. Cr. 401, 254 P. 985; Wofford v. State, 40 Okla. Cr. 18, 266 P. 494.

In the prohibition act there is no form for a search warrant, but the general law as to search warrants, section 2881, C. O. S. 1921, does set out a form providing that a search warrant shall describe the place to be searched with reasonable particularity. The authority of the officer to make the search is derived exclusively from the provisions of the warrant. The description in the warrant of the place to be searched and the thing to be seized should be sufficient to show jurisdiction, and not so broad as to permit a general search, but should be limited by reasonable certainty to the particular place described to comply with the provisions of sections 2881, 7009, and 7012, Compiled St. 1921.

The search warrant under which the officers claim to have been acting when they searched the residence of the defendant was unlawful for want of proper description, and void, and any search made by the officers of the defendant's premises was without authority of law. The objection of the defendant to the introduction of the testimony of the officers making the search under the search warrant was well taken and should have been sustained. The search warrant being void, the seizure of any property found in defendant's home was unlawful and without authority of law and was inadmissible in evidence against the defendant.

The law has wisely provided how the home of an individual may be entered by officers for the purpose of making a search, and has particularly described what is necessary to be done by the officers before procuring a search warrant to search the home of a citizen of the state of Oklahoma. This law must be strictly complied with, in order that our laws may be properly enforced

and the rights of our citizens upheld. Those charged with the enforcement of the laws must comply with the law before seeking to secure testimony against those they believe to be violating the law. It serves no good purpose for a sworn officer of the law to fail or neglect to comply with the law in making an effort to secure evidence against some one whom be believes is violating the law. Unless our officers obey and respect the law, we cannot hope for the faithful observance of the same by its citizens.

It is urged by the state that the officers while making the search for intoxicating liquors found articles that had been stolen, and that the action of the officers in seizing the articles so stolen was legal and the testimony was admissible, and the court committed no error in permitting them to testify as to the articles they found at defendant's home and to identify the same when brought into court. To sustain this contention, our attention is invited to 36 Corpus Juris 951, § 591. Upon examination of the authorities cited in that case, we find that it is not applicable to the facts in this case, as the search made by the officers in this case was without authority and was a trespass upon the sacred rights of defendant's home.

There are other errors argued by the defendant, but the view we take of this record we do not deem it necessary to consider them.

All the evidence procured by the officers, having been unlawfully procured, was inadmissible. There being no competent evidence to sustain the verdict, the case is reversed and remanded.

DOYLE, P. J., and EDWARDS, J., concur.